Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 2056 | DATE | 7/10/2002 |
| CASE TITLE | Corporate Assets, Inc. vs. Paloian, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order affirming bankruptcy court's confirmation of the sale and denial of administrative costs. Any pending motion in this case is terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 11 2002 | |
| | Notified counsel by telephone. | | date docketed | 10 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| MPJ | courtroom deputy's initials | 02 JUL 10 PM 2:29 U.S. DISTRICT COURT CLERK | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE GGSI LIQUIDATION, INC. et al.,<br><br>                Debtors.<br>_____<br><br>CORPORATE ASSETS, INC.,<br><br>                Appellant,<br><br>    v.<br><br>GUS A. PALOIAN, Chapter 7 Trustee of GGSI LIQUIDATION, INC. and GOSS HOLDINGS, INC.,<br><br>                Appellee. | **DOCKETED**<br>JUL 1 1 2002<br><br>No. 02 C 2056<br><br>Appeal from No. 01 B 31751 |

## MEMORANDUM OPINION AND ORDER

Corporate Assets, Inc. ("CAI") was a bidder at an auction sale in the Chapter 11 bankruptcy case of Goss Holdings, Inc. and Goss Graphic Systems, Inc. ("Debtors"). It submitted the highest bid at an auction, but Judge Carol A. Doyle of the bankruptcy court allowed the Debtors to re-open the bidding when a higher bid came in. CAI was the highest bidder at the second phase of the auction, but its winning bid was $352,500 higher than its original bid. It appeals the bankruptcy court's confirmation of the sale and denial of administrative costs. I affirm.

I.

On January 21, 2002, during the Chapter 11 phase[1] of the

---

[1] The Debtors' case has since been converted to a Chapter 7 case.

Debtors' bankruptcy case, the Debtors held a public auction of personal property from their facility in Cedar Rapids, Iowa. Before the auction, the bankruptcy court approved bidding procedures for the auction, Appendix to CAI's Brief Exhibit ("Ex.") 3, which included a provision that the Debtors could, "reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any bid that is . . . contrary to the best interest of Goss, its estates, and its creditors." Ex. 7 at 5-6. The bidding procedures, which were distributed to the bidders prior to the auction, Ex. 4 at 7, also provided that "[a]t or before the Sale Hearing [before the bankruptcy court to confirm the sale], Goss may impose such other terms and conditions as it may determine to be in the best interests of Goss' estate, its creditors, and other parties in interest." Ex. 7 at 5. The procedures also allowed the Debtors to evaluate the bids after the conclusion of the auction and determine which was the best bid. *Id.* at 4.

At the auction on January 21, one of the other bidders asked whether the results of the auction would be final, or whether someone could submit a higher bid at the sale hearing. Debtors' counsel responded:

> Well, the Court's order provides that today is the day for the auction, and when we close the auction it will be final. I cannot obviously state that someone can't walk into court on Wednesday [the day scheduled for the confirmation hearing] and offer 10 million dollars for the stuff and have the Court say that it's not going to accept their bid; but under the procedures, today is the day for the auction.
> The debtors anticipate that when they close the auction

2

> today, they will take the lead bidder who has provided all of
> the necessary information to be a qualified bidder and will
> present tat to the Court to approve.
> So I guess I can't give you 100 percent assurance that
> someone can't walk into court on Wednesday and try to outbid
> whoever wins today, but I think that that is a very slim
> possibility.

Ex. 4 at 15-16. At the end of the auction, CAI was the highest bidder with a bid of $2.25 million. Myron Bolling Auctioneers ("Bolling") was the second highest bidder with a bid of $2.075 million. The Debtors closed the auction and said that they would present all of the bids to the bankruptcy court. Ex. 4 at 34.

The following day, the day before the confirmation hearing in the bankruptcy court, Bolling told the Debtors that he had misunderstood when the assets had to be removed from the facility and that he wanted to up his bid to $2.45 million. The Debtors told CAI that they intended to reopen the bidding and hold a second auction, and they received approval from the bankruptcy court to do so. Ex. 10. The second auction was held on January 24, 2002; CAI participated under objection and was the highest bidder with a bid of $2,602,500 ($352,500 higher than its bid at the first auction).

The sale hearing was held on January 29, 2002. CAI filed a written objection and asked the bankruptcy court to ignore the results of the second auction and award administrative fees. Ex. 5; Ex. at 12-16. The bankruptcy court overruled the objection, denied administrative fees and confirmed the sale results from the second auction. Ex. 6 at 17-26; Exs. 1-2. The bankruptcy court held that

3

the Debtors' had acted within the bidding procedures when they held a second auction, that the bid results of the second auction were in the best interests of the estate, Ex. 6 at 22, and that CAI did not have a reasonable expectation that its first bid was final in light of the discretion given to the Debtors under the bidding procedures, *id.* at 24.

The bankruptcy court relied specifically on the "modification" provision of the bidding procedures, which I quote above, and held that reopening the auction fell within the Debtors' broad discretion to "impose such other terms and conditions as it may determine to be in the best interest" of the bankruptcy estate and its creditors. *Id.* at 23. The court also noted that Bolling had not received notice of a change in the asset purchase agreement relating to the deadline for the removal of assets until the commencement of the auction, but other bidders had learned of it before, and that Bolling did not have an opportunity to contact any of its members who were not participating in the auction to reconsider the bid in light of this new information. Under the circumstances, the court concluded that the second auction provided "the most level playing f[ie]ld for the parties involved." *Id.* at 25. The bankruptcy court concluded that fundamental fairness did not require an award of administrative expenses. *Id.* at 26.

II.

CAI appeals both the confirmation of the second auction sale

4

price and the denial of administrative expenses. I review the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *In re Food Barn Stores, Inc.*, 107 F.3d 558, 562 (8th Cir. 1997). I will reverse the bankruptcy court's confirmation or refusal to confirm a sale only if it abused its discretion. *In the Matter of Chung King, Inc.*, 753 F.2d 547, 549 (7th Cir. 1985).

A bankruptcy court asked to confirm an auction sale of assets is faced with two competing considerations: the integrity and finality of public auctions and the best interests of the bankruptcy estates' creditors. *Food Barn*, 107 F.3d at 564. Of these, the second is the primary consideration: "[t]he governing principle at a confirmation proceeding is the securing of the highest price for the bankruptcy estate." *Chung King*, 753 F.2d at 549. Nonetheless, although "the highest bidder in a judicial sale has not even equitable title until the sale is confirmed by the court . . . it is important that the bidder receive what he had reason to expect, and that nothing impair public confidence in the regularity of judicial sales." *In re Gil-Bern Indus., Inc.*, 526 F.2d 627, 628 (1st Cir. 1975). *See also Chung King*, 753 F.2d at 550 ("'[I]f parties are to be encouraged to bid at judicial sales there must be a stability in such sales and a time must come when a fair bid is accepted and the proceedings are ended.'").

In *Gil-Bern*, the court held that the bankruptcy court abused

5

its discretion in refusing to confirm an adequate bid from an auction and accepting a slightly higher "upset bid" offered at the confirmation hearing, after the bidding had closed. 526 F.2d at 629. There the notice of the sale established a deadline for bids, and the upset bid was received after the deadline. *Id.* at 628. The Second Circuit has interpreted *Gil-Bern* to apply to "relatively straight-forward asset sales with simple cash offers from rival bidders in which one party emerged clearly victorious at the auction, and the losing party then made a belated attempt to trump the winning bid." *In re Financial News Network Inc.*, 980 F.2d 165, 169 (2d Cir. 1992). CAI argues that this is such a case. In *Financial News*, however, the court warned that *Gil-Bern*, though soundly reasoned, "should not be blindly applied so as to reduce the broad discretion and flexibility a bankruptcy court must necessarily have to enhance the value of the estates before it." *Id.* The *Financial News* court held that there was no abuse of discretion in accepting an upset bid "where the bidding scenario . . . [wa]s complex and fluid," and the upset bid "was consistent with both the rules by which th[e] particular auction was conducted and the reasonable expectations of the bidders." *Id.* at 170.

The Eighth Circuit has adopted a "sliding scale" approach, applied by the bankruptcy court here, recognizing that "the importance of estate enhancement diminishes as an auction participant's reasonable expectations, and the gravity of finality,

6

increase." *Food Barn*, 107 F.3d at 565. After a sale has been confirmed by the bankruptcy judge, or the bidder's expectations are otherwise "adequately solidified," therefore, it is generally "improper to frustrate anticipated results except in the limited circumstances where there is a grossly inadequate price or fraud in the conduct of the proceedings." *Id.* at 565 & n.13. Where there is no similarly "solidified" expectation in the result of the auction, however, "a reviewing court should evaluate the bankruptcy judge's decisions on a case by case basis, with due regard both for the parties' expectations and the judge's broad discretion to weigh the multifarious interests involved." *Id.* at 565.

"[T]he important notions of finality and regularity in judicial auctions are appeased if the court acts consistently with the rules by which the particular sale is conducted and in compliance with the bidders' reasonable expectations." *Food Barn*, 107 F.3d at 565. The bidding scenario here was somewhere between the simple, fixed bidding deadline in *Gil-Bern* and the "complex and fluid" auction in *Financial News*. Although the procedures here contemplated only one auction, the rules of bidding were subject to the discretion of the Debtors to reject any bid that was not in the best interest of the estate and its creditors, to consider the bids and the best interests of the estate before making a recommendation to the bankruptcy court, and to "impose such other terms and conditions as it may determine to be in the best interests" of the

estate and its creditors up to and during the sale hearing before the bankruptcy judge. Ex. 7. Unlike *Gil-Bern*, the procedures here did not include a cut-off for accepting bids. *See also J.J. Sugarman Co. v. Davis*, 203 F.2d 931 (10th Cir. 1953) (holding that "a high bidder at a judicial sale, whose bid has not been accepted, could not object" to reopening the bidding, "especially [where the sale] order expressly permitt[ed] the right to reject all bids"). The bankruptcy judge correctly concluded that the Debtors acted within the rules of the game by reopening bidding for a higher offer after the first auction but before the first offer by CAI had been confirmed.

The sale also complied with the bidders' reasonable expectations. All bidders had received copies of the bidding procedures before the auction, Ex. 4 at 7, and the Debtors' counsel stated at the auction that he could not "give . . . 100 percent assurances" that the bids at the conclusion of the auction would be final and would not be upset by higher bids before the sale hearing before the bankruptcy judge, *id.* at 15-16. Although CAI, as the highest bidder, had a pretty good chance of having its bid approved, the Debtors made clear before and at the auction that nothing was cast in stone until the bankruptcy court confirmed the sale. Under the circumstances, any expectation that the highest bid at the auction would be accepted and confirmed was unreasonable. CAI's expectation was not "adequately solidified" to invoke the

8

fraud or gross inadequacy standard described in *Food Barn*.

The second auction was also in the best interests of the bankruptcy estate and its creditors. Although Bolling's upset bid was only approximately nine percent higher than CAI's highest bid at the first auction, the ultimate price for the assets was nearly sixteen percent greater. The Seventh Circuit has suggested that these differences would be insufficient to demonstrate that the original bid was "grossly inadequate," *Chung King*, 753 F.2d at 550 (8.6% to 12.5%), but I have already determined that the "grossly inadequate" standard does not apply here. A sixteen percent increase is a significant boon to the estate. *See, e.g., In re Muscongus Bay Co.*, 597 F.2d 11, 13 (1st Cir. 1979) ("It is not an inappropriate use of hindsight to note . . . that the bankrupt estate gained a 21.5% [p]rice increase by the extension of the bidding period."). The bankruptcy court did not abuse its discretion by concluding that the benefit to the estate outweighed the bidders' expectations and the interest in finality and confirming the sale based on CAI's bid from the second auction.

Ordinarily, a debt is afforded administrative priority under 11 U.S.C. § 503 only if it both arises from a transaction with the debtor and is beneficial to the debtor in the operation of its business. *In the Matter of Jartran, Inc.*, 732 F.2d 584, 587 (7th Cir. 1984). "Bankruptcy courts have discretion in awarding administrative expense priority, but this discretion is limited by

the Bankruptcy Code's requirement that the debt be an actual and necessary cost of preserving the estate." *In re Lunan Family Rests.*, 194 B.R. 429, 449 (Bankr. N.D. Ill. 1996). Legal expenses may sometimes be recovered under § 503 as a matter of "fundamental fairness" where, for example, the party making the administrative claim has had to defend against frivolous litigation by the trustee. *See In re Met-L-Wood Corp.*, 115 B.R. 133, 135-36 (N.D. Ill. 1990). CAI sought an administrative claim for attorneys' fees and for the difference between its first and second bid. As I have already explained, the Debtor's position was not frivolous, and the bankruptcy court properly accepted the higher bid. Fundamental fairness is not implicated here, and the bankruptcy court did not abuse its discretion in denying CAI's claim for administrative expenses.

The decision of the bankruptcy court is AFFIRMED.

ENTER ORDER:

*[signature]*

**Elaine E. Bucklo**
United States District Judge

Dated: July *10*, 2002